My name is Matt Campbell. I'm from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Aguirre-Ganceda. Slack v. McDaniel admonishes against the interpretation of procedural prescriptions in federal habeas cases to trap the unwary pro se petitioner. And we believe that splitting hairs in the midst of certiorari proceedings is just such a trap. But you've got a Supreme Court rule that answers the question, do you not? Respectfully, Your Honor, I don't believe that the rule does answer the question. The Supreme Court has told us that it does. The problem I have with your argument is the court has been pretty clear in its jurisprudence that once it denies certiorari, the judgment is final as far as the Supreme Court is concerned. Well, I think that's correct, for example, in the context of the Clay case. However, if you look at the facts behind that case or Jimenez v. Quartermaine or some of the other cases, they're addressing situations, generally speaking, in Clay, for example, where there was no certiorari petition filed. So the question at that point was whether a case became final upon the issuance of a mandate or upon the expiration of time. In several circuits, I know that the Third Circuit, for example, was using the mandate from the Court of Appeals. So this issue came before the court, and the Supreme Court said, no, it won't become final until the expiration time. But the Supreme Court issues mandates as well. It's just that they have a different rule than we have. Our rule is clear. The judgment is not final until the mandate issues at the appellate level with the federal circuits. But we don't have a rule like 16.3. That's correct. The Supreme Court is in a little different context. It's been on appeal. They have a circuit opinion, and they come to bringing nine justices out and decide it. The minute they file the opinion, I don't think they've granted an additional review in 1 percent of the cases. Of the denial from cert? Yeah. I would agree. It is exceedingly rare. All right. So that is the sense behind the rule that the Supreme Court has adopted. They're not going to delay the imposition of sentence or execution or whatever it may be. Well, respectfully, I think that one can distinguish between the rule 16.3, which in our briefing we've discussed is a notification provision, and finality. And I believe that some of the cases cited, such as the Simpson case, where they discuss and they say that a ruling can be considered a qualified ruling until such time as the 25-day limit occurs. In Rule 16.3, the word final is never used. It says that an order will go back to the court of appeals informing them of the Supreme Court decision. But nowhere in Rule 16.3 does it say final. But it is the last stop on the train. I mean, the problem I'm having is I understand your argument with regard to the federal circuits, but there's only one Supreme Court, and when it speaks, we listen. That's all we need to know. But I believe the issue there would then be if one looks at Rule 16.3 and interprets that as an absolute, that once a denial of cert has occurred, the case is final, then that would seem to undo the provisions of Supreme Court Rule 44.2, which states that when someone files a petition for rehearing from a denial of certiorari, that one has to include a certification stating that you're not doing it for sole purposes of delay. If we took the rule, if we took the guidance of 16.3 saying that it is final, done forever, then there would be, Rule 44.2 would be meaningless. There would be nothing that you could delay. The Supreme Court always has the authority to do whatever it decides it has the authority to do. And it clearly can go back and revisit a case even though it may have been final. I mean, it can overrule a prior precedent if it decides in the passage of time that it ought to do that. But that doesn't mean that the original judgment was not final. And I guess the other question I have for you is why should we create a circuit split here when the other circuits to have addressed this question have all ruled against you? Well, there are certainly other circuit opinions we would respectfully offer that they're incorrect. And I believe in looking at some of this court's own jurisprudence that this has already been before this court, albeit in a different context. And I speak specifically of the English case in which one of the petitioners, Petitioner Tano, they had an issue about magistrate-conducted voir dire. And in that case, the new decision had come out. Cert was denied. During the 25-day rehearing portion of time, Petitioner Tano filed a petition for rehearing in the Supreme Court. And there were procedural issues in that case relating to whether or not there were defaults, et cetera. And I believe it was Judge Browning stated that in that case, the petition for rehearing had been filed. And because of that rehearing period, the filing of a 2255 was actually filed during the direct review process. So Judge Browning has essentially said that direct review continues during that 25 days. That's what he said in the English case. So while I do understand there is conflicting circuit case law out there, this court has already said. Let me ask you to focus on that for a minute because just as one judge, my main concern here is not with the intricate arguments back and forth on whatever the Supreme Court's rules mean. It's rather what does the statute mean, right? Because we have a statute that talks about what's final. And there, if there's an array of circuit courts lined up with a different ruling, that to me has a lot of weight. So how many circuits have gone the other way on the exact issue before us? Your Honor, respectfully, I don't know the exact number. Ballpark, six. Ballpark is fine. Six, perhaps seven. In all candor, I believe the other answer would be all of them. Okay. And no one's gone the way you're urging us to go, right? And you may have good reason, but no other circuit has adopted that approach. Not in the context of this case, of this type of case. I would point out that in the Hanover case, which I cited, which is out of the First Circuit, which is a completely different context, I grant, it did accept the fact that 16.3 was, in fact, a notification rule and not, in essence, not a substantive rule dictating the issue of finality. Okay. So arguably, the First Circuit has accepted some of these arguments. I believe that this Court, in the English case that I just mentioned, has also accepted it. I'd like to reserve a couple of moments at the end. Why don't you do that? But I do wish to just make one quick point regarding the equitable tolling argument. The facts are there. I'm not going to recite those. However, I would like to note that the majority of cases, and in fact I believe all of the cases cited by both the government and in the district court's opinion discussing various cases saying that attorney negligence is not sufficient, those are discussed in the context of negligence by a post-conviction lawyer, not by a direct appeals lawyer. Obviously, one has a right to effective assistance of appellate counsel. One does not have a right to effective assistance of post-conviction counsel. So I believe that's an important distinction, but now I'll reserve my time. Good. Okay. Thank you. Okay, Mr. Shogren. Good morning. The government's view from the U.S. Attorney's Office in Yakima. Did you drive across the pass? I did last night. Was there snow? A little bit of snow on the summit, high winds and very cold. May it please the court, counsel, unless the court has any questions concerning what we consider the great weight of authority supporting the government's reading of Rule 16.3, which is Rule 16.3 itself, which appears to be very clear on the issue of finality, absent intervention by a Supreme Court justice. The Clay case, the Supreme Court case of Clay, which seems to spell it out very clearly, too, that denial of cert marks finality for purposes of the one-year statute of limitations. And then the seven circuits that have ruled similarly all have interpreted 16.3 the same way. So unless the court has any additional questions. My only question is the same one I asked Mr. Campbell. Is there any circuit that has adopted the position being advocated by Pellant? Not that I know of, Your Honor. What's your response to his citation to English? I think, referring back to the brief, Your Honor, frankly, I think we distinguished English. I can't articulate it. Okay. I'll take your brief. Okay. Thank you, Mr. Schroeder. I don't think my colleagues have other questions. Okay. I was prepared to answer any questions on the equitable domain. All right. Thank you. Does anyone have a question? No. I understand the standards of PACE. That's fine. Mr. Campbell, it looks like you get almost a soliloquy here. Great. Just in regards to this part. It's hard. You have a tough case with all those other circuits lined up. But go ahead. Take your question. That's why I have more faith in English and the precedent of this court, Your Honor. I just wish to state, again, most of the other circuits that have decided this have relied on what I believe is an erroneous interpretation of cases such as Clay, where they have gone through and they've said, well, Clay says it's final upon a denial of cert. But I think it's important, again, to recognize that federal courts answer the questions posed before them and generally do not issue what would amount to advisory opinions. Had the Supreme Court or any of the circuit courts gone out and tried to decide an issue such as we're presenting now, arguably, if it wasn't the correct factual scenario, they would have been deciding something that wasn't properly before them. This issue was not before the Supreme Court in Clay. It wasn't before the Supreme Court in Jimenez. Jimenez, I believe, actually is a rather expansive case and has a bizarre situation. I'm always assured Judge Gould's reticence to declare that seven other circuits that have examined this issue are wrong. The Ninth Circuit's got it right and, therefore, we're now going to create the circuit split. We don't do very well in the Supreme Court when we do that. So you're going to have to present a pretty compelling argument to me that seven other circuits to examine this issue have just totally botched it. Well, I think if you go back to the Simpson case out of the Supreme Court, which we had cited, and I think the spirit of a case such as Jimenez, where a decision supposedly became final and then became unfinal, the Supreme Court has taken, in my view, a pretty broad conception of what being final means. Yes, but isn't it within the power of the Supreme Court to adopt its own rules? And don't we have an obligation to enforce them? Certainly the Supreme Court can adopt its rules. So you want to go to some statutory base and stretch it and come out with a different result? Respectfully, I don't believe that's what we're asking for, again, because if 16.3 is a notification provision rather than a substantive limit, then I don't think we're misinterpreting or stretching their rules. Obviously, if one does view it the way some of the other circuits have, that would create a problem. You think your case is so special that if you applied to the court and asked for an exemption from the rule and to come within the scope of any justice can set it on the calendar, you'd win that? Well, I guess I respectfully don't know how to answer that question. I believe that our interpretation of the rule would be considered correct, so I believe that Mr. Aguirre can say this petition was timely. It's a matter of right. Yes, it is a matter of right that people have to petition for rehearing. So it would seem disingenuous to me to give people a matter of right to petition for rehearing. Maybe it's petitioners. This rule does not apply across the board. Well, a petition for rehearing? A petition for rehearing of a denial of cert could be in any case. You're cast in the context of a petition for rehearing in a criminal case, right? No, you could petition for rehearing of a denial of cert in any case. You're not taking up a civil question. You're taking up a criminal law question, right? Well, technically you're not because you're looking at a 2255, which is asking whether someone is unconstitutionally confined. So arguably this is a civil case. But I believe the right exists, and certainly there's nothing in the rules governing 2255 cases, for example, that says that if you petition for rehearing of a denial of cert, that you're entitled to less than the one-year statutory deadline under ADPA. Okay, you're a couple minutes over your time, but if Judge Beazer and Judge Tallman have more questions, we'll go farther. But otherwise I think we should bring it to an end. I guess you also had to get here from Spokane, right? That's correct. Did you drive or fly? I flew over this morning, Your Honor. All right, good. Well, have a safe flight back. Thank you very much. We always appreciate getting distinguished advocates from eastern Washington over here. Thanks. Okay, that last case, Aguirre-Gonzalez shall be submitted.
judges: Beezer, Gould, Tallman